PARIENTE, J., concurring in part and dissenting in part.
I concur that Morrison is entitled to a new penalty phase. But I dissent from the majority's denial of a new evidentiary hearing on Morrison's intellectual disability claim. The postconviction court improperly relied solely on Morrison's IQ score of 78 when he was eight years old to conclude that Morrison did not meet the third prong of the intellectual disability test-that the intellectual disability manifested before the age of eighteen-and was, therefore, not intellectually disabled. Taking into consideration the significant amount of testimony offered during the postconviction evidentiary hearing indicating that Morrison's intellectual disability manifested prior to the age of eighteen, I would err on the side of caution and grant Morrison an opportunity to prove that he is intellectually disabled at a hearing conducted pursuant to this Court's decision in Oats v. State, 181 So.3d 457 (Fla. 2015), which emphasized that " 'manifested' [does not] equate[ ] to 'diagnose [ ],' " id. at 469, and was a decision the postconviction court did not have the benefit of when it denied Morrison's intellectual disability claim.
The postconviction court found that Morrison could not be intellectually disabled solely because he obtained an IQ score of 78 on an intellectual disability test administered when Morrison was eight years old. In doing so, the postconviction court felt compelled to conclude that Morrison was not intellectually disabled, despite the expert and layperson testimony tending to prove that, despite the IQ score of 78, Morrison showed signs of intellectual disability before the age of eighteen. In fact, the trial court stated that its decision was based on the IQ score "despite significant deficits in adaptive functioning" before the age of eighteen.
*227 The postconviction court denied Morrison's intellectual disability claim, stating:
[T]he medical experts report [Morrison's] IQ scores are: 78 (1976); 78 (1997); 79 (2008); and 70 (2012). Although [Morrison's] score of 70 is certainly within the range of subaverage intellectual functioning, [Morrison] did not achieve this score until he was more than forty years old. The only score that satisfies the third prong of intellectual disability-onset before the age of eighteen-is [Morrison's] score in 1976 when he was eight-years old.
This [c]ourt is constrained by caselaw and statute not to declare [Morrison] intellectually disabled despite significant deficits in adaptive functioning. [Morrison] is not entitled to relief on [his intellectual disability claim].
The above order, including its cursory analysis, demonstrates the postconviction court's failure to provide Morrison with the constitutionally required holistic review of his intellectual disability claim. See Walls v. State, 213 So.3d 340, 346 (Fla. 2016), cert. denied, 2017 WL 2654649, ---U.S. ----, --- S.Ct. ----, 199 L.Ed.2d 186 (2017). In Hall v. Florida, ---U.S. ----, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014), which the postconviction court discussed in its order, the United States Supreme Court made clear that sentencing courts should "consider ... substantial and weighty evidence of intellectual disability as measured and made manifest by the defendant's failure or inability to adapt to his social and cultural environment, including medical histories, behavioral records, school tests and reports, and testimony regarding past behavior and family circumstances .... [T]he medical community accepts that all of this evidence can be probative of intellectual disability, including for individuals who have an IQ test score above 70." Id. at 1994.
Morrison presented numerous lay witnesses in support of his intellectual disability claim. Collectively, these witnesses testified that Morrison was born prematurely, was mentally slow from a young age, had trouble performing simple tasks such as picking up items from the store and preparing food, and generally required assistance. To this effect, Joseph Turner, a childhood friend, testified that other children made fun of Morrison when he was growing up because "he wasn't up to ... speed with the regular kids," and Morrison would howl at the moon and scream for hours as a child. Irving Huffingham, the principal of Morrison's elementary school, testified that Morrison was referred for special testing and evaluation because his teachers saw something concerning in his performance. Huffingham further testified that Morrison tested in the "top end of the borderline range of [intellectual disability]." Morrison's school records indicated that Morrison dropped out of school when he was sixteen years old, having only reached the seventh grade.
At the postconviction evidentiary hearing, Morrison also presented numerous expert witnesses in support of his intellectual disability claim. For example, Dr. Gordon Taub administered the WAIS-IV to Morrison in March 2012. Dr. Taub believed that Morrison's full-scale IQ score of 70 on the WAIS-IV was valid and reliable. Dr. Eisenstein testified that he concluded that Morrison is intellectually disabled because he has deficits in intellectual functioning and deficits in adaptive functioning, which existed before Morrison reached the age of 18. Dr. Eisenstein explained that Morrison's academic difficulties and consistent academic failures constituted evidence that his intellectual disability existed prior to age 18. Dr. Eisenstein testified that he would categorize Morrison's impairment "between moderate to extreme." Dr. Krop *228 testified that Morrison's school records suggested that he suffered from intellectual deficiencies.
In Hall, the United States Supreme Court held that Florida's interpretation of section 921.137(1), Florida Statutes (2013), as establishing a strict IQ score cutoff of 70, "create[d] an unacceptable risk that persons with intellectual disability will be executed, and thus is unconstitutional." 134 S.Ct. at 1990. The United States Supreme Court recognized in Hall that, based on a consensus within the medical community, the manifestation prong of the intellectual disability test simply requires the "onset of these deficits during the developmental period." Id. at 1994 ; see Brumfield v. Cain, --- U.S. ----, 135 S.Ct. 2269, 2282, 192 L.Ed.2d 356 (2015) (indicating that this prong requires the defendant to demonstrate that intellectual deficiencies manifested "before he [or she] reached adulthood"). Indeed, in describing the manifestation prong, we have expressly rejected the notion that manifestation of an intellectual disability prior to the age of 18 "equates to [a] 'diagnos[is]' " of an intellectual disability because "the only way to find an intellectual disability would [then] be if the diagnosis already existed by the age of 18." Oats, 181 So.3d at 469. Consistent with this description of the manifestation prong, the Court also held that a determination of intellectual disability is a "conjunctive and interrelated assessment" such that no single factor can be considered dispositive. Id. at 459 (quoting Hall, 134 S.Ct. at 2001 ).
After Hall and the postconviction court's order in this case, in Oats, this Court echoed Hall, stating: "[A]s the Supreme Court has now recognized, because these factors are interdependent, if one of the prongs is relatively less strong, a finding of intellectual disability may still be warranted based on the strength of other prongs." Id. at 467-68 (citing Hall, 134 S.Ct. at 2001 ). This Court made clear that "courts must consider all three prongs in determining an intellectual disability, as opposed to relying on just one factor as dispositive." Id. at 467. Thus, every intellectual disability claim must be given a "holistic review." Walls, 213 So.3d at 346.
As I have previously stated:
More than fundamental fairness and a clear manifest injustice, the risk of executing a person who is not constitutionally able to be executed, trumps any other considerations that this Court looks to when determining if a subsequent decision of the United States Supreme Court should be applied. At stake in this case is a principle that could not be better expressed than in the words of Justice Kennedy writing for the majority in Hall:
The death penalty is the gravest sentence our society may impose. Persons facing that most severe sanction must have a fair opportunity to show that the Constitution prohibits their execution. Florida's law contravenes our Nation's commitment to dignity and its duty to teach human decency as the mark of a civilized world. The States are laboratories for experimentation, but those experiments may not deny the basic dignity the Constitution protects.
Walls, 213 So.3d at 348-49 (Pariente, J., concurring).
The significant amount of testimony offered during the postconviction hearing indicates that Morrison's intellectual disability manifested prior to the age of eighteen. However the postconviction court discounted this evidence of "significant deficits in adaptive functioning" focusing solely on Morrison's one childhood IQ score that fell *229 outside the test's margin of error. Thus, I would give Morrison the opportunity to prove that he is intellectually disabled at a hearing conducted pursuant to this Court's opinion in Oats. Accordingly, I dissent from the majority's denial of Morrison's claim that he is entitled to a new evidentiary hearing on his claim of intellectual disability.